# Exhibit C

| | |
|---|---|
| **DISTRICT COURT, DENVER COUNTY, COLORADO**<br><br>1437 Bannock Street<br>Denver, CO 80203 | DATE FILED<br>June 4, 2026 11:00 AM<br>FILING ID: 40DE11B27E687<br>CASE NUMBER: 2026CV32051 |
| **PLAINTIFF:** ROBERT CLARK, on behalf of himself and all others similarly situated,<br><br>v.<br><br>**DEFENDANT**: EQUIFAX INC. | ▲ **COURT USE ONLY** ▲ |
| *Attorneys for Plaintiff*:<br><br>**PELUSO LAW LLC**<br>Patrick H. Peluso (#47642)<br>865 Albion Street, Suite 250<br>Denver, CO 80220<br>Telephone: (720) 805-2008<br>Facsimile: (720) 336-3663<br>Email: ppeluso@pelusolawfirm.com<br><br>**BURSOR & FISHER, P.A.**<br>Joseph I. Marchese (*pro hac vice application forthcoming*)<br>1330 Avenue of the Americas, 32nd Floor<br>New York, NY 10019<br>Telephone: (646) 837-7150<br>Facsimile: (212) 989-9163<br>Email: jmarchese@bursor.com<br><br>[*Additional counsel on signature page*] | **Case Number:**<br><br><br>**Courtroom:** |
| **CLASS ACTION COMPLAINT AND JURY DEMAND** | |

**COLO. REV. STAT. § 13-17-201 STATEMENT**

Plaintiff, pursuant to Colo. Rev. Stat. § 13-17-201, pleads that all claims asserted herein are made in good faith and are non-frivolous, and are filed for the express purpose of establishing the meaning, lawfulness, and/or constitutionality of a law, regulation, or constitutional right, specifically Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA". The meaning, lawfulness, or constitutionality of PTFA has not been determined by the Colorado Supreme Court and the issues presented herein are matters of first impression.

Plaintiff Robert Clark ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for violations of Colo. Rev. Stat. § 6-1-304 (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA") against Defendant Equifax Inc. ("Defendant" or "Equifax"). Plaintiff makes the following allegations pursuant to his counsel's investigation and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. On May 27, 2005, former Colorado Governor Bill Owens signed into law HB05-1288,[1] which amended the PTFA to prohibit commercially listing a cell phone number in a directory, without permission.[2] *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I).

2. This prohibition is designed to protect privacy. As former State Representative Mark Cloer,[3] a prime sponsor of HB05-1288,[4] stated in describing this new portion of the PTFA: "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important."[5]

3. Indeed, concern over cell phone privacy is widespread. According to a research paper presented in May 2005 at the American Association for Public Opinion Research (AAPOR)'s Annual Conference[6] and January 2006 at the American Statistical Association (ASA)'s Second International Conference on Telephone Survey Methodology:[7]

> [T]here appears to be a strong reluctance on the part of cell phone owners to have their cell phone numbers listed in a directory. …
>
> This reluctance on the part of respondents to have their cell phone number listed in a directory may be rooted in not wishing to incur additional costs due to unsolicited incoming calls. …

---

[1] https://www.leg.state.co.us/clics2005a/csl.nsf/fsbillcont2/1BB0D3E00348AC6987256F90007C20C7?Open. *See also* https://scholar.law.colorado.edu/cgi/viewcontent.cgi?article=3081&context=session-laws-2001-2050.

[2] https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/IndSumm/574E34C489356ADA87256FB100612E60?OpenDocument. *See also* https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/91320994cb8e0b6e8725681d005cb995/574e34c489356ada87256fb100612e60?OpenDocument.

[3] *See* https://www.leg.state.co.us/clics2005a/directory.nsf.

[4] https://scholar.law.colorado.edu/cgi/viewcontent.cgi?article=3289&context=session-laws-2001-2050 at p. 2461. *See also* https://www.leg.state.co.us/CLICS2005A/csl.nsf/StatusAll?OpenFrameSet.

[5] https://www.9news.com/article/news/local/politics/legislative-library-feb-23-2005/73-344789916.

[6] https://aapor.org/wp-content/uploads/2024/05/AAPORPrograms2005.pdf at pp. 13, 84.

[7] https://scholar.google.com/citations?view_op=view_citation&hl=en&user=I2jkzr0AAAAJ&citation_for_view=I2jkzr0AAAAJ:M3ejUd6NZC8C; https://ww2.amstat.org/meetings/tsmii/2006/index.cfm?fuseaction=main.

> A more likely reason for their unwillingness to have their cell phone number listed is that respondents view the cell phone as more of a private medium of communication than their land-line phone. They probably wish to restrict access to their cell phone number to family and friends.[8]

4. The Colorado General Assembly enacted subsection (4) of the PTFA to address these privacy concerns and to protect cell phone users from the misappropriation of their personal information. This aligns with the PTFA's overall purpose, as articulated by Colo. Rev. Stat. § 6-1-301:

> The general assembly hereby finds, determines, and declares that the use of telephones for commercial solicitation is rapidly increasing; that this form of communication offers unique benefits, but entails special risks and poses the potential for abuse; that the general assembly finds that the widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones.

5. Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

> (a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
> > (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

6. Despite this abundantly clear proscription, Defendant has listed the cellular telephone numbers of thousands of Colorado residents in its for-sale and for-profit directories, without requesting (let alone actually receiving) affirmative consent to such listings.

7. Thus, while Defendant profits handsomely from its unauthorized commercial listing of Plaintiff's and other Class Members' personal information, it does so at the expense of Coloradans' statutory privacy rights, under the PTFA.

8. Not only is Defendant's misappropriation unlawful – it is also dangerous. The Federal Trade Commission's ("FTC") report on "Data Brokers" states:

> There are a number of potential risks to consumers from data brokers' collection and use of consumer data. … [T]hey may facilitate the sending

[8] http://www.asasrms.org/Proceedings/y2005/files/JSM2005-000345.pdf at p. 4005.

> of advertisements … which some consumers may find troubling and which could undermine their trust in the marketplace. Moreover, … people search products can be used to facilitate harassment, or even stalking, and may expose domestic violence victims, law enforcement officers, prosecutors, public officials, or other individuals to retaliation or other harm. [In addition, s]toring [d]ata [a]bout [c]onsumers [i]ndefinitely [m]ay [c]reate [s]ecurity [r]isks[.][9]

9. Plaintiff brings this action to prevent Defendant from further violating the privacy rights of Colorado cell phone users and to recover statutory damages from Defendant, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## PARTIES

10. Plaintiff Robert Clark is, and has been at all relevant times, a resident and citizen of Colorado Springs, Colorado. Plaintiff's cellular telephone number was listed by Defendant in its BusinessConnect for Marketing; Contact and Locate; Digital Identity Trust; FirstSearch; Marketing Identity Elements; and TargetPoint Alerts directories to advertise products and services and/or pursuant to Defendant's provision of its paid subscription services. Defendant never requested – and Plaintiff never provided – affirmative consent, through written, oral, or electronic means, to such listings. Plaintiff had no reasonable ability to discover Defendant's use of his personal information until shortly before filing suit.

11. Defendant Equifax Inc. is a Georgia corporation with its principal place of business at 1550 Peachtree Street N.W., Atlanta, Georgia 30309. Defendant is primarily engaged in the business of selling or leasing goods or services. Specifically, Defendant operates the BusinessConnect for Marketing; Contact and Locate; Digital Identity Trust; FirstSearch; Marketing Identity Elements; and TargetPoint Alerts directories. Therein, and for commercial purposes, Defendant has listed the cellular telephone numbers of thousands of individuals whom it knows to reside in Colorado.

## JURISDICTION AND VENUE

12. The Court has subject matter jurisdiction pursuant to Colo. Const. Art. VI, § 9.

13. The Court has personal jurisdiction over Defendant pursuant to Colo. Rev. Stat. § 13-1-124(1)(a) because Defendant transacts business in Colorado. The Court also has personal jurisdiction over Defendant pursuant to Colo. Rev. Stat. § 13-1-124(1)(b). Defendant's tortious conduct – listing the cellular telephone numbers of thousands of individuals whom Defendant knows to reside in Colorado, without requesting or receiving said individuals' affirmative consent – caused injury in Colorado and thus constituted a tort here.

---

[9] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. 48.

14. Venue is proper in this Court pursuant to Colo. R. Civ. P. 98(c)(1), which permits trial of this action in the county of Plaintiff's choice, as Defendant is not a resident of Colorado. *See* Colo. R. Civ. P. 98(c)(1) ("if the defendant is a nonresident of this state, the [action] may be tried … in the county designated in the complaint[.]").

## COMMON FACTUAL ALLEGATIONS

### I. Overview of Defendant's Directory

15. Defendant is a data broker – a company "that collect[s] consumers' personal information and resell[s] or share[s] that information with others[.]"[10]

16. Specifically, Defendant provides online "people search" (also known as "people finder") services. People search companies, like Defendant, specialize in compiling vast amounts of information about individuals from various sources, such as public records, social media, and other data brokers.[11] Defendant also provides online business-to-business or "B2B Lead Generation Directory Services[, which] are platforms or tools that facilitate identifying and acquiring potential business-to-business leads. This kind of service compiles and organizes … contact details, business categories, industry, size, location, and other relevant data. B2B Lead Generation Directories … often offer a range of features tailored to B2B marketing and sales needs."[12]

17. Defendant and its competitors monetize said personal details through their directories – some of which are ad-supported and give users free access to the data, and others of which furnish reports about people for a fee.

18. Defendant knowingly lists Coloradans' cell phone numbers in its BusinessConnect for Marketing;[13] Contact and Locate;[14] Digital Identity Trust;[15]

[10] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. i.

[11] https://consumer.ftc.gov/articles/what-know-about-people-search-sites-sell-your-information.

[12] https://targetron.com/lead-generation-directory.

[13] *See, e.g.*, https://web.archive.org/web/20260518040954/https://assets.equifax.com/assets/usis/businessconnect_marketingUserGuide.pdf ("Search for Prospects – Contacts[.] Using job title, name, and business specific information find contacts from multiple companies that meet your selling criteria. … *Potential fields included are name, phone number, email address, and job title").

[14] *See, e.g.*, https://web.archive.org/web/20251215090129/https://developer.equifax.com/products/apiproducts/contact-and-locate ("Contact and Locate focuses on providing historical information on Address, Phone, and Property for consumers."); https://web.archive.org/web/20260301042926/https://assets.equifax.com/marketing/US/assets/contact-and-locate.pdf ("Contact and Locate products focus on providing accurate, current, and historical address and phone information to help you meet your needs."); *id.* ("What Information is returned by Contact and Locate[:] Phone number[,] … Phone type").

[15] *See, e.g.*, https://web.archive.org/web/20260323045324/https://www.equifax.com/business/product/digital-identity-trust/ ("Digital Identity Trust (DIT) confirms identity authenticity by using multi-dimensional data sources including phone number, email, address, SSN, date of birth

FirstSearch;[16] Marketing Identity Elements;[17] and TargetPoint Alerts[18] directories.

19. Defendant lists Plaintiff's and Class Members' cell phone numbers for a commercial purpose: (a) to entice individuals to pay to acquire access to Equifax subscriptions and/or credits; [19] and (b) to fulfill Defendant's obligations to individuals who have paid for

---

and mobile device verification."); https://web.archive.org/web/20260210113714/https://developer.equifax.com/products/apiproducts/digital-identity-trust ("Digital Identity Trust helps to verify an identity with confidence through real-time, risk assessments of the consumer's digital identity i.e., identity information like name, address along with their phone number, email address and digital device – either individually or layered together for a multi-factor assessment.").

[16] *See, e.g.*, https://web.archive.org/web/20260518030024/https://assets.equifax.com/assets/usis/firstSearch_ps.pdf ("FirstSearch consistently scores highest in returning more right-party addresses, right-party telephone numbers, and unique phone numbers than incumbent solutions."); *id.* ("Highly effective, yet simple to use, FirstSearch returns the critical, highly relevant data you need[.] … The following information is available via batch or online: … Previous and current phone numbers[;] Cell phone indicator").

[17] *See, e.g.*, https://web.archive.org/web/20260220061758/https://www.equifax.com/business/product/marketing-identity-elements/ ("Marketing Identity Elements provides raw consumer Personally Identifiable Information (PII), including current and former names/aliases, current and prior addresses, gender, date of birth, deceased flags, and current/past phone numbers and email addresses.").

[18] *See, e.g.*, https://web.archive.org/web/20260316233154/https://www.equifax.com/business/product/targetpoint-alerts ("Equifax delivers near real-time streaming alerts or daily lists of consumers directly to lender endpoint. Lender can then quickly extend competitive firm offers of credit via direct mail, email, phone, or text.").

[19] Defendant generally does not openly advertise the precise prices of its products. However, publicly available webpages indicate that all involve subscriptions, credits, and/or other payment: (1) BusinessConnect for Marketing. *See, e.g.*, https://web.archive.org/web/20260518040954/https://assets.equifax.com/assets/usis/businessconnect_marketingUserGuide.pdf ("You ... can choose to enrich the account with Equifax data, which would count towards your Business enrich subscription. Enrich an Account[:] 1 record removed from your business data package[.] Enrich a Contact[:] 1 record removed from your contact data package[.] Enrich a Contact & Enrich Account[:] 1 record removed from your business data package[;] 1 record removed from your contact package[.]"). (2) Contact and Locate. *See, e.g.*, https://web.archive.org/web/20260220061755/https://www.equifax.com/business/product/contact-and-locate/ ("Connect with our sales team today to get a product consultation."); https://web.archive.org/web/20260301042926/https://assets.equifax.com/marketing/US/assets/contact-and-locate.pdf ("For more information about Contact and Locate from Equifax, contact your sales representative."); https://web.archive.org/web/20251215090129/https://developer.equifax.com/products/apiproducts/contact-and-locate ("Contact and Locate from Equifax aids customers with … Address, Phone, and Property for consumers."); (3) Digital Identity Trust. *See, e.g.*, https://web.archive.org/web/20260323045324/https://www.equifax.com/business/product/digital-identity-trust/ ("Connect with our sales team today to get a product consultation."). (4) FirstSearch. *See, e.g.*, https://web.archive.org/web/20260518030024/https://assets.equifax.com/assets/usis/firstSearch_ps.pdf ("'That's why we use FirstSearch. It is unquestionably the best, and what's more, the cost is very reasonable for the success rates that we experience.'"). (5) Marketing Identity Elements. *See, e.g.*, https://web.archive.org/web/20260220061758/https://www.equifax.com/business/product/marketing-identity-elements/ ("Marketing Identity Elements help businesses improve and verify consumer identity and contact information for marketing purposes. … Connect with our sales team today to get a product

Equifax subscriptions and/or credits. Indeed, that is Defendant's entire business model. Defendant is literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to its customers.

## II. Defendant's Conduct Harms Coloradans

20. Consumer data is key to the $26 billion-per-year online advertising industry in the United States.[20] Clearly, and per the FTC, consumer data possesses inherent monetary value:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[21]

21. In fact, individuals' private information has become such a valuable commodity that companies now offer individuals the opportunity to monetize their personal data.[22]

22. These companies' business models capitalize on a fundamental principle underlying the modern information marketplace: Consumers recognize the economic value of their private data. Along these lines, research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of protecting their data.[23] A 2014 survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers avoid doing business with companies who they believe do not protect their privacy.[24] The same is true for 80 percent of smartphone users, who say that they avoid using smartphone apps that they don't believe protect their privacy.[25]

---

consultation."). (6) TargetPoint Alerts. *See, e.g.*, https://web.archive.org/web/20260316233154/ https://www.equifax.com/business/product/targetpoint-alerts ("Focus your acquisition efforts toward the right consumers. Understand consumer financial capacity and credit history so you can find the ideal prospects for your offers and reach new audiences. … Connect with our sales team today to get a product consultation.").

[20] http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html.

[21] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf at p. 2.

[22] *See, e.g.*, https://www.washingtonpost.com/technology/2023/02/06/consumers-paid-money-data/; http://www.nytimes.com/2012/02/13/technology/start-ups-aim-to-help-users-put-a-price-on-their-personal-data.html; https://techcrunch.com/2023/08/16/caden-lands-15m-to-let-users-monetize-their-personal-data/; https://www.theverge.com/2019/6/11/18661595/facebook-study-app-monitor-phone-usage-pay; https://sifted.eu/articles/gener8; https://www.theverge.com/2012/2/8/2785751/google-screenwise-panel-web-monitoring-knowledge-networks; https://www.sidehustlenation.com/get-paid-for-your-data/; https://millennialmoneyman.com/get-paid-for-your-data/.

[23] *See, e.g.*, https://web.archive.org/web/20250622135647/https://www.enisa.europa.eu/sites/default/files/publications/monetising_privacy.pdf; https://papers.ssrn.com/sol3/Delivery.cfm?abstractid=3305347.

[24] *See* https://web.archive.org/web/20190820142832/http://www.theagitator.net/wp-content/uploads/012714_ConsumerConfidenceReport_US1.pdf at p. 3.

[25] *Id.*

23. Defendant's misappropriation of Coloradans' cell phone numbers undeniably deprives state residents of the ability to enjoy their PTFA privacy rights. It also deprives them of the real, quantifiable value of such data.

24. Further, "[p]eople search sites ... offer a wealth of information that can be exploited by malicious actors."[26] For one, "[b]undling [personal data] all together and making it so easily accessible can ... put ordinary people at risk of ... stalking and other forms of harassment."[27] Second, people search sites' "comprehensive data allows cybercriminals to build detailed profiles of potential victims, making it easier to craft convincing scams or carry out identity theft."[28] This "put[s] almost anyone within the reach of fraudulent telemarketers[]" and other wrongdoers.[29]

25. Information disclosures like Defendant's are particularly dangerous to the elderly. "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide."[30] The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."[31]

26. Making matters worse, "[o]nce marked as receptive to [a specific] type of scam, a consumer often is bombarded with similar fraudulent offers from a host of scam artists."[32]

## CLASS ALLEGATIONS

27. Plaintiff seeks to represent a class defined as all Colorado residents whose cell phone numbers were listed on one of Defendant's BusinessConnect for Marketing; Contact and Locate; Digital Identity Trust; FirstSearch; Marketing Identity Elements; or TargetPoint Alerts products without their affirmative consent during the applicable statute of limitations period (the "Class").

28. Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

29. **Numerosity:** The Class is composed of at least thousands of individuals, the joinder of which in one action would be impracticable. The disposition of their claims through this class action will benefit both the parties and the Court.

---

[26] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[27] https://innovation.consumerreports.org/Data-Defense_-Evaluating-People-Search-Site-Removal-Services-.pdf.

[28] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[29] http://www.nytimes.com/2007/05/20/business/20tele.html.

[30] *Id.*

[31] https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf at p. 1.

[32] *Id.* at p. 3.

30. **Existence and Predominance of Common Questions of Fact and Law:** There is a well-defined community of interest in the questions of law and fact involved affecting the members of the proposed Class. The questions of law and fact common to the proposed Class predominate over questions affecting only individual Class Members. Such questions include, but are not limited to, the following: whether Defendant violated Colo. Rev. Stat. § 6-1-304(4)(a)(I); and whether Plaintiff and Class Members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

31. **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because Plaintiff, like all other Class Members, had his cell phone number listed by Defendant for a commercial purpose; Defendant did so without requesting or receiving Plaintiff's affirmative consent (through written, oral, or electronic means); and Defendant's misappropriation of Plaintiff's personal data (including the economic value thereof) came at the expense of Plaintiff's PTFA privacy rights.

32. **Adequacy:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

33. **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Finally, Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### Violation of the Prevention of Telemarketing Fraud Act, Colo. Rev. Stat. § 6-1-304(4)(a)(I)

34. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

35. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

36. Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

> (a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
> > (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

37. Defendant failed to comply with this PTFA mandate.

38. Defendant knowingly lists Coloradans' cell phone numbers in its BusinessConnect for Marketing; Contact and Locate; Digital Identity Trust; FirstSearch; Marketing Identity Elements; and TargetPoint Alerts directories.

39. To "list" in this context means "to have or show (someone or something) as part of a list, register, or record." *See List,* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/list.

40. Defendant's BusinessConnect for Marketing; Contact and Locate; Digital Identity Trust; FirstSearch; Marketing Identity Elements; and TargetPoint Alerts products are directories – i.e., an "electronic resource containing lists of information, usually in alphabetical order, for example people's phone numbers or the names and addresses of businesses in a particular area[.]" *Directory*, Oxford Learner's Dictionary, https://oxfordlearnersdictionaries.com/us/definition/english/directory.[33]

41. Defendant lists Plaintiff's and Class Members' cell phone numbers for a commercial purpose: (a) to entice individuals to pay to acquire access to Equifax subscriptions and/or credits; and (b) to fulfill Defendant's obligations to individuals who have paid for Equifax subscriptions and/or credits. Indeed, that is Defendant's entire business model. Defendant is literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to its customers.

42. Defendant never requests nor receives Coloradans' "affirmative consent, through written, oral, or electronic means, to such listing[.]" Colo. Rev. Stat. § 6-1-304(4)(a)(I). In fact, Defendant never requests nor receives any consent whatsoever, affirmative or otherwise, to list cell phone numbers. Rather, Defendant lists the cell phone numbers of Coloradans it has never engaged with, has had no connection to, and who are unaware of its existence.

---

[33] *See also Directory*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/directory ("an alphabetical or classified list (as of names and addresses)[.]"); *Directory*, Cambridge Essential American English Dictionary, https://dictionary.cambridge.org/us/dictionary/essential-american-english/directory ("a book or list of names and numbers"); *Directory*, AllWords.com Multi-Lingual Dictionary, https://www.allwords.com/word-directory.html ("A list of names, address etc., of specific classes of people or organizations, often in alphabetical order or in some classification.").

43. Defendant's misappropriation of Class Members' personal data (including the economic value thereof) came at the expense of Class Members' PTFA privacy rights. It deprived Class Members of the real, quantifiable value of such data. And it exposed Class Members to elevated risks of stalking, harassment, scams, identity theft, and unwanted telemarketing.

44. Thus, on behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class; (3) damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

B. Declaring that Defendant's actions, as set out above, violate Colo. Rev. Stat. § 6-1-304(4)(a)(I) (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA");

C. Awarding damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to comply with the PTFA;

E. Awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c);

F. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G. Awarding such other and further relief as equity and justice may require.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury for all issues so triable.

Dated: June 4, 2026

Respectfully submitted,

**PELUSO LAW LLC**

*/s/ Patrick H. Peluso*
Patrick H. Peluso

Patrick H. Peluso (#47642)
865 Albion Street, Suite 250
Denver, CO 80220
Telephone: (720) 805-2008
Facsimile: (720) 336-3663
Email: ppeluso@pelusolawfirm.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*pro hac vice application forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com

**BURSOR & FISHER, P.A.**
Matthew A. Girardi (*pro hac vice application forthcoming*)
50 Main Street, Suite 475
White Plains, NY 10106
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: mgirardi@bursor.com

*Attorneys for Plaintiff*